UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

$14,463.00 IN U.S. CURRENCY,

      Defendant

Case No. _____

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $14,463.00 in U.S. Currency for violations of 21 U.S.C. § 841 *et. seq.*

### THE DEFENDANT *IN REM*

2. The defendant *in rem* is $14,463.00 in U.S. Currency ("the Defendant Property") seized from a St. Paul, Minnesota, DoubleTree hotel room on May 26, 2020. The Defendant Property is in the custody of the United States Marshals Service.

### JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United

States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Property is located in this District.

**FACTS**

6. On May 14, 2020, Mark Oren Schorn ("Schorn") and five other individuals were indicted for conspiracy to distribute methamphetamine in Case No. 20-cr-80 (ECT/BRT). A bench warrant was issued for Schorn's arrest.

7. Prior to his indictment, Schorn was interviewed by law enforcement. During his interview he admitted, among other things, that he was selling methamphetamine.

8. During the same interview, Schorn also stated that his girlfriend, Sheri, was selling drugs with him. Sheri was known to law enforcement to be Sheri Marie Vadnais ("Vadnais"). Schorn stated that Sheri had her own source for the narcotics she sold but that he did give her small amounts of methamphetamine to sell when he had it.

9. Members of the Drug Enforcement Administration (DEA) Minneapolis Group 71 initiated surveillance for Schorn's arrest. On May 26, 2020, Schorn was located at a DoubleTree Hotel in St. Paul.

10. Around 11 a.m. on May 26, 2020, the DEA arrested Schorn as he exited the DoubleTree hotel through a utility door. He had several bags in hand on his way to his Ford Taurus.

11. Vadnais exited the same utility door at about that same time. Vadnais, who was also carrying bags, was detained.

12. When asked if they had anything on their persons that would be dangerous to the officers, such as weapons or needles, Schorn and Vadnais stated they did not, but that there were needles in one of the bags. Both Schorn and Vadnais claimed they had user amounts of methamphetamine in their bags.

13. Schorn had U.S. Currency in his pocket. Schorn and Vadnais also consented to the search of their bags and hotel room.

14. The bags contained, among other things:

   a. small red ziplock baggie with approximately 10 grams of suspected methamphetamine which was found inside a black plastic box;

   b. three small ziplock baggies, blue, clear and red, each of which contained suspected methamphetamine and a glass methamphetamine pipe which were found inside an orange duffel bag; and

   c. and a small black zip up handbag which further contained a small baggie of suspected marijuana, an electronic scale with methamphetamine residue on the scale, approximately one dozen unused small ziplock baggies, two unused hypodermic needles, vape items and rolling papers found inside a black duffel bag with red accents.

15. Schorn stated they had emptied their room but the door was propped open by a bag. Both denied there was methamphetamine in the hotel room.

16. DEA Special Agent Terrence Olstad ("SA Olstad") entered the hotel building

3

through the utility door and saw that the door to room No. 105 was propped open with a plastic grocery bag that appeared to hold clothing and laundry detergent. SA Olstad pushed the bag inside Room No. 105 to secure the door and then contacted the hotel management to cancel active keys to the room.

17. The DEA Group brought a drug detection canine to the hotel. The canine alerted, indicating it had detected drug odors or residue on some of Schorn's and Vadnais' bags.

18. Officers also searched Vadnais' purse. SA Olstad observed $2,500 in U.S. Currency in the purse, but there were no visible narcotics or drug paraphernalia. The purse was returned to Vadnais. No evidence was seized from the purse.

19. When led down the hallway of the hotel, the canine alerted only on room No. 105.

20. A search warrant was requested and issued for room No. 105.

21. When the search warrant was executed, Officers found a small green metal lockbox that contained a large amount of U.S. Currency and foreign coinage. The U.S. Currency was seized and placed in a DEA evidence bag.

22. Officers also found a glass methamphetamine pipe on a desk chair in the hotel room.

23. The evidence was brought to where Vadnais and Schorn were detained. Schorn claimed the money from the lockbox, stating that it was from the sale of his motorcycle.

24.     Vadnais did not claim the money. Instead, she attempted to confirm Schorn's story that the money was from the sale of his motorcycle.

25.     DEA aggregated the currency from the lockbox with currency from Schorn's pocket, sealing the evidence and having Schorn initial the evidence. The evidence, including the U.S. Currency, was transported to DEA's Minneapolis/St. Paul District Office for logging and safekeeping. An official count was done, which revealed that a total of $14,463 had been seized.

26.     Schorn was unemployed at the time of his arrest.

27.     On August 19, 2020, Schorn pled guilty to the charge of conspiracy to distribute 500 grams of a mixture and substance containing methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846. Schorn admitted, among other things, that he was part of a conspiracy to distribute methamphetamine, that on April 14, 2020 his co-conspirators were stopped with approximately 23 pounds of methamphetamine meant for delivery to other co-conspirators, and that on the same date approximately $100,000 of U.S. currency was seized from Schorn's apartment. Case No. 20-cv-80, ECF No. 147.

28.     DEA subsequently completed administrative forfeiture of $99,306 of U.S. currency that was seized from Schorn's apartment.

29.     Based on, among other things, Schorn's participation in a conspiracy to distribute methamphetamine, his admission that Sheri Vadnais also dealt methamphetamine, Schorn's and Vadnais' admission that the Defendant Currency was Schorn's when it was seized, the suspected methamphetamine in Schorn's possession, the

5

canine alerts to the presence of drug residue in the hotel room and Schorn's and Vadnais' bags, and the additional drug paraphernalia, electronic scale, and empty small Ziploc baggies, the Defendant Currency was seized for forfeiture based upon its connection to violations of the Controlled Substances Act .

## BASIS FOR FORFEITURE

30.  The allegations in the preceding paragraphs are realleged and incorporated by reference.

31.  The defendant $14,463.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

32. The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant in rem, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant in rem, that the Defendant in rem be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: 2-18-2022

CHARLES J. KOVATS, JR.
Acting United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55412
Phone: 612-664-5600
Craig.baune@usdoj.gov

## VERIFICATION

I, Terrence W. Olstad, verify and declare under penalty of perjury as follows:

I am a Special Agent for the Drug Enforcement Administration ("DEA"). I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a DEA Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 2-17-2022                              *s/Terrence Olstad*
                                                            TERRENCE W. OLSTAD
                                                            Special Agent
                                                            U.S. Drug Enforcement
                                                            Administration